## In re The Peoples Bank of Farrell

*John D. Meyer,* for exceptant; *Thomas H. Armstrong,* for respondent.

McLAUGHREY, P. J., July 19, 1932.—This case comes before the court on exception of John D. Meyer, United States Attorney for the Western District of Pennsylvania, acting for and in behalf of the United States, to the account of Peter G. Cameron, Secretary of Banking of the Commonwealth of Pennsylvania, in possession of the Peoples Bank of Farrell, Pa. The exception is that the account failed to recognize the priority of the claim of the United States under the Revised Statutes, Sec. 3466 [31 USC § 191].

It would seem that there is no dispute as to the facts in this case, it being admitted that the United States Postal Department had certain funds on

deposit in the bank at the time it was taken over by the secretary of banking, and immediately prior to the time it was taken over a draft was purchased. The question before the court is whether this class of debts due the United States is entitled to preference over depositors and other creditors.

The Federal act which governs the question, R. S. Sec. 3466, 31 USC § 191, reads as follows:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all of the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

It is apparent from the decisions rendered by the courts that the question of preference is governed by the status of the bank when taken over, the manner in which it was taken and the reason therefor, and whether the bank committed an act of bankruptcy, or whether it was insolvent, within the meaning of the United States Revised Statutes. There are two decisions by the United States Supreme Court which show the distinction in this regard, and the question is which one of these cases rules the case now before the court. This distinction has not only been recognized by the Federal courts, but by the various state courts.

In the certificate of possession we find the following:

"Whereas, it appears from an examination of the business and affairs of the said People's Bank, by duly authorized representatives of the secretary of banking, that it is in an unsafe and unsound condition to continue business, and is conducting business in an unsafe and unsound manner; and

"Whereas, in the opinion of the secretary of banking, it is necessary for the protection of depositors and the public that the secretary of banking shall forthwith take possession of the business and property of the said Peoples Bank."

The law of Pennsylvania governing the taking of possession of banks by the secretary of banking, as set forth in The Banking Act of June 15, 1923, P. L. 809, as amended by the Act of May 5, 1927, P. L. 762, sets forth in section twenty-one reasons which justify the taking possession of the affairs of a bank by the banking commissioner. The reasons are as follows:

1. That it persistently violated the law.

2. Conduct of business in an unauthorized or unsafe manner.

3. That it is in an unsafe or unsound condition to continue business.

4. Impairment of capital.

5. Suspension of payment.

6. Refusal to comply with an order of the secretary of banking.

7. Refusal to submit records and affairs of business to the authorities or examiner.

8. Refusal to be examined under oath or affirmation regarding the affairs of the bank.

9. That it is in the hands of a receiver, in bankruptcy or not, or has assigned for the benefit of creditors.

We have cited to us the case of United States v. State of Oklahoma, 261 U. S. 253. We have examined this case carefully and are of the opinion that the case before us is very similar and comes within the line of authorities represented by this case. It is apparent that in this case there was no act of bankruptcy committed by the Peoples Bank. Its inability to pay its debts in full was never

admitted. The taking over by the secretary of banking is not a declaration of insolvency, as both the certificate of possession as filed and the resolution of the board of directors state the reason for taking over the affairs of the bank by the secretary was a frozen condition of the assets, and the threatened run on the bank, rendering the bank "in an unsafe and unsound condition to continue business, and [that it was] conducting business in an unsafe and unsound manner."

In giving a reason for the taking over of the bank, the certificate of possession further says: "It is necessary for the protection of depositors and the public that the secretary of banking shall forthwith take possession of the business and property of the said Peoples Bank."

If there was no action taken either by the bank or the secretary of banking which would be equivalent to an act of bankruptcy so as to bring the case within the meaning of section 3466, there can be no priority or preference allowed the claims of the United States, as its right to priority or preference is limited, as the Supreme Court says, "to the particular state of things specified in the statute."

In the case of United States v. State of Oklahoma, supra, the court held that priority as given to claims of the United States against an insolvent debtor by Revised Statutes, section 3466, is limited to the particular state of things specified in the statute.

It is stated in this decision:

"The claim of priority asserted by the United States is based upon § 3466 of the Revised Statutes of the United States, which provides:

" 'Whenever any person indebted to the United States is insolvent . . . the debts due to the United states shall be first satisfied; and the priority . . . shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached . . . cases in which an act of bankruptcy is committed.' "

Mere inability to pay all debts in the ordinary course of business is not insolvency, giving the right of priority unless it be manifest in one of the modes pointed out in the statute.

The Supreme Court in this case has decided that mere taking over by a state banking commissioner does not bring the case within section 3466, nor does the inability to pay depositors in the ordinary course of business or to continue as a banking concern bring the case within said section.

The Supreme Court of Massachusetts in the case of United States of America v. Commissioner of Banks et al., 254 Mass. 173, 179, 149 N. E. 883, says:

"Insolvency within the meaning of § 3466 was not necessary to justify the taking possession by the commissioner of banks, and no inference of insolvency under that section can be inferred therefrom."

The claim of the United States against the bank on liquidation by the banking commissioner was held not to be entitled to priority.

We quote further from this decision as follows (page 178):

"It is established by a series of authorities, that insolvency alone, incapacity to pay all the debts which the debtor owes, is but one circumstance only to bring the case within the statute. It must be insolvency, accompanied with the circumstance that there has been a general assignment by the voluntary act of the debtor, or a legal bankruptcy or insolvency. It is not sufficient that a debtor is incapable of paying his debts, and that the winding up of his affairs is effected, in whole or in part, by legal proceedings. Under the attachment laws of Massachusetts, the whole of a debtor's property might be attached at the suits of

various creditors, and be insufficient to satisfy all his debts. It might be sold and converted into money, in a course of legal proceedings, by the sheriff, and the whole of the money, thus in the custody of the law, be paid out to creditors; and yet the United States can assert no priority."

We think the following paragraph quoted from the Oklahoma case (p. 263) states the conclusion which should be reached in this case:

"As insolvency within the meaning of § 3466 was not necessary for the taking of possession by the bank commissioner and is not shown to exist, and as no act of bankruptcy as defined by . . . any law of Oklahoma is shown to have been committed, and as the debtor bank was not divested of its assets in one of the modes specified in § 3466, the case is not within that section."

We have had cited by the exceptant the case of Bramwell, Superintendent, *v.* United States Fidelity and Guaranty Co., 269 U. S. 483. From a careful examination of the Bramwell case we are satisfied that there exists a distinction between it and the Oklahoma case which is clearly recognized by the Federal courts. In that case the bank's assets were less than its liabilities, and it voluntarily, by resolution of the board of directors, surrendered its assets to the superintendent of banks for liquidation under Oregon laws. The Supreme Court held that this action was equivalent to a voluntary assignment for the benefit of creditors and that the bank committed an act which was equivalent to an act of bankruptcy, and, therefore, that the case came within section 3466.

It is apparent that the law in Oregon is different from the law in Pennsylvania. The Supreme Court held in its opinion, relating to the Oregon law, that the statutes "provide for the handing over of the property of insolvent banks to the state superintendent of banks to be by him administered and disposed of for the benefit of creditors. . . . The state law excludes all other methods for the liquidation of the debts of insolvent banks. . . . The state law required him [the bank commissioner] to perform the functions of an assignee, receiver or trustee for the liquidation of the debts of an insolvent."

It would seem from this that the taking over the bank by the banking commissioner was a declaration of insolvency in itself, while in Pennsylvania a bank may be taken over for a considerable number of reasons which do not in any way involve the question of the bank's insolvency. There seems to be no question in the Bramwell case but that the bank was insolvent at the time of taking over by the bank commissioner, because the law under which it was taken over related to an insolvent bank, and the directors passed a resolution practically declaring its insolvency, and it is also apparent that the assets were less than the liabilities. The facts in that case, we think, do not correspond with the facts and the law in our present case. It may be said that the Peoples Bank actually is not insolvent.

The Supreme Court held in the Oklahoma case (p. 260) : "If priority in favor of the United States attaches at all, [in the taking over of a bank by the state banking commissioner] it takes effect immediately upon the taking over of the bank."

Some cases have been cited by the exceptant that may seem to sustain its position, but these authorities are decisions of the lower Federal courts. The conclusion which we reach from the decisions of the United States Supreme Court is that, under the facts which we have in this case, we would not be justified in giving the claim of the United States priority.

### Order

And now, July 19, 1932, this matter came on to be heard and was argued by counsel; whereupon, after due consideration, the exceptions are dismissed.

From W. G. Barker, Mercer, Pa.